**IN THE COURT OF APPEALS OF IOWA**

No. 17-0236
Filed April 5, 2017

**IN THE INTEREST OF F.B., J.B., and K.B.,**
**Minor Children,**

**D.E., Father,**
       Appellant.

_____

       Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

       A father appeals from the order adjudicating his child to be a child in need of assistance.  **AFFIRMED.**

       Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant father.

       Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

       Michael J. Bandstra of Bandstra Law Office, Des Moines, for minor children.

       Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

The father appeals from the juvenile court's findings as related to the children being adjudicated as children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b) (2016), that is, "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." He does not challenge the findings the children are CINA under section 232.2(6)(c)(2) (failure to properly supervise), (6)(e) (failure to provide needed medical treatment), and (6)(n) (parent's mental capacity results in child not receiving adequate care). The court adjudicated the children in need of assistance on all four grounds but did dismiss the allegation that the children were CINA pursuant to section 232.2(6)(d) (sexual abuse).

The State must prove the CINA ground alleged by clear and convincing evidence. Iowa Code § 232.96(2). We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the juvenile court's findings of fact but are not bound by them. *Id.*

Upon a full review of the record, we find no reason to disturb the juvenile court's findings that the children are in need of assistance under section 232.2(6)(b). *See id.* at 41 (discussing section 232.2(6)(b)).

On October 20, 2016, four children were temporarily removed from the care of the Daniel and Tiffney. Daniel is the father of three of the children: F.B., born August 2012; J.B., born July 2014;[1] and K.B, born February 2016. After an uncontested hearing on October 27, the emergency removal was confirmed and

---

[1] F.B. and J.B. are Daniel's biological children by a different mother.

continued due to the parents' "failure to meet children's basic medical needs; failure to provide appropriate nutrition of children; failure to properly supervise children; possible sexual abuse for [F.B.];" the custodial parents "allowing inappropriate persons around children; unresolved substance abuse issues" of custodial mother; and the "children's unsafe living environment." In the removal order, the juvenile court noted that upon the department of human services (DHS) direction following a report of possible abuse:

> [Tiffney] took [J.B.] and [F.B.] to the hospital as directed. The photographic evidence clearly depicts the numerous, unexplained injuries, and serious injuries to these two children. [F.B.]'s rash covered the entire area her diaper would have covered. It was red, blistering and bleeding. According to testimony it would have been painful to her and was so bad the treating medical staff was unable to determine if it was simply one of the wors[t] cases of diaper rash the doctor had ever seen or due to some type of virus such as herpes. [J.B.]'s sores on his hips were almost to the bone and it was the doctor's opinion that the parent's explanation of a reaction to duct tape (apparently used to hold on his diapers) was not plausible. [J.B.] had bruising all over his body, including on his head, ears, and legs. The substance observed on the child's feet the day before was still on his feet and was confirmed to be feces. Further, both [F.B.] and [J.B.] were significantly underweight and medical staff reported that when [J.B.] was seen at the hospital he consumed copious amounts of food and drink and was obviously hungry. The medical staff also noted he was emotionally withdrawn and did not speak or smile when staff attempted to engage with him. Neither he nor [F.B.] had been seen for regular checkups or immunizations which the parents claimed to financial reasons but notably, both [I.H.] and [K.B.] have been regularly seen by doctors. The evidence seems to indicate [F.B.] and [J.B.] were targeted for abuse and neglect.

As noted in the CINA adjudication order, an "uncontested" adjudication hearing was held on November 18, 2016,[2] after which the juvenile court made these specific written findings, which we adopt:

> The Court makes the following specific findings of fact: The evidence shows that . . . [J.B.] had significant bruising all over his body, including legs, face, head, and torso. The parents offered multiple explanations for, including him being in a car accident, him being abused by his older sibling, and the child being an "active" child. The Court finds the amount of bruising and changing explanations, coupled with the other circumstances, convinces the Court [J.B.]'s injuries were non-accidental and inflicted upon him by . . . his parents who were his sole caretakers.

The court also stated on the record that it found sufficient evidence that Daniel and Tiffney "neglected the children in their care and physically abused the children in their care." These findings are supported by the medical records and photos in the record. We thus affirm the CINA adjudication pursuant to section 232.2(6)(b), finding the children were persons "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."[3]

Daniel also argues on appeal that he did not engage in domestic violence with the mother of F.B. and J.B. and now objects to being required to engage in domestic-abuse services. This requirement was imposed because the mother of

---

[2] Daniel officially "took no position" regarding the adjudication. At the disposition hearing, he agreed "his children should be confirmed as adjudicated as previously found."

[3] Moreover, we observe that at the dispositional hearing, Daniel's counsel made the following statement:

> I will note for the record that because the father has now tentatively resolved his criminal charges, this is the first time the father has been able or has chosen to take a position, and he is in agreement, agrees that his children should be confirmed as adjudicated as previously found.

F.B. and J.B., Daniel's former wife, reported to a child protective worker that when she and Daniel lived together there was ongoing, "extreme domestic violence," which she confirmed with the court at the adjudication hearing. At the hearing, Daniel's counsel stated: "[Daniel's] position is that domestic violence did not occur. But he's willing to accept whatever services the Department or the Court requests him to do including therapy including whatever is necessary." Consequently, we conclude Daniel has not preserved for appeal a challenge to the juvenile court's order that he participate in "services directly targeted for domestic violence issues." *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases.").[4]

**AFFIRMED.**

---

[4] There was no formal finding that Daniel committed domestic abuse and no such a finding was required. Terms and conditions imposed upon parents by the court are intended to assure the protection of the child or children. Iowa Code § 232.106.